**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Vincent Fitzgerald,<br><br>               Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>               Respondents. | No. CV-19-5219-PHX-MTL<br><br><u>DEATH-PENALTY CASE</u><br><br>**ORDER** |

Petitioner John Vincent Fitzgerald is an Arizona prisoner under sentence of death. He seeks an order from the Court equitably tolling the one-year statute of limitations for filing his federal habeas corpus petition for 90 days. (Doc. 11.) *See* 28 U.S.C. § 2244(d)(1). Respondents filed an objection, asking the Court to deny the motion as premature (Doc. 12), and Petitioner has filed his reply (Doc. 13). The Court held a hearing on June 17, 2020. After considering the arguments and briefs of the parties, the Court denied the motion for equitable tolling without prejudice. (Doc. 15.) The Court's rationale is discussed below.

## **Background**

On September 9, 2019, Petitioner filed a statement of intent to file a habeas corpus application under § 2254 (Doc. 1), a motion to appoint counsel (Doc. 2), and an application to proceed in forma pauperis (Doc. 3). The Court appointed the Federal Public Defender's Office to represent Petitioner and ordered Petitioner to file his petition for writ of habeas corpus no later than July 2, 2020. (Docs. 5, 9.) The parties agree that the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28

1  U.S.C. § 2244(d), expires on July 21, 2020. (Doc. 8 at 2.)

2      Petitioner now requests that the Court equitably toll the limitations period for 90
3  days, up to and including October 19, 2020. (Doc. 11.) Petitioner asserts he has been
4  diligently pursuing his rights, but extraordinary circumstances caused by the global
5  COVID-19 pandemic are preventing him from timely filing his habeas corpus petition.

6      Respondents claim that, until Petitioner files a petition, he has not and cannot
7  demonstrate sufficiently reasonable diligence. Respondents also assert Petitioner's motion
8  is premature because he has not yet demonstrated that an extraordinary circumstance stood
9  in his way and prevented him from timely filing. The Court agrees that the motion is
10 premature.

## **Discussion**

12     A petitioner may be entitled to equitable tolling if he shows "(1) that he has been
13 pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his
14 way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting
15 *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). A
16 petitioner must show that the extraordinary circumstances were the cause of his
17 untimeliness. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Stillman v.*
18 *LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003)). A determination of whether there are
19 grounds for equitable tolling is a highly fact-dependent question. *Whalem/Hunt v. Early*,
20 233 F.3d 1146, 1148 (9th Cir. 2000).

21     Petitioner asserts he has been diligently pursuing his rights, but extraordinary
22 circumstances caused by the global COVID-19 pandemic are preventing him from timely
23 filing his habeas corpus petition by substantially delaying his counsel's investigation and
24 interfering with counsel's duty to develop and raise all potentially meritorious claims.
25 Petitioner asserts that the governmental, institutional, and societal limitations placed on
26 travel and contact with other persons in response to COVID-19 have interfered and
27 continue to interfere with his ability to timely file a petition.

28     COVID-19 was officially designated as a pandemic by the World Health

Organization (WHO) on March 11, 2020. The Governor of Arizona declared a state of emergency the same day and issued a statewide stay-at-home order effective March 31, 2020, which was ultimately extended until May 15, 2020. On May 12, 2020, the Governor issued an executive order permitting the gradual opening of businesses but cautioned all individuals in public areas to maximize physical distance from others and to avoid social settings where appropriate physical distancing is not practical unless precautionary measures are observed and Center for Disease Control and Prevention (CDC) guidelines are followed.

Shortly after the WHO's designation and the Governor's declaration, the Chief District Judge in this district issued a series of general orders regarding court operations under the exigent circumstances created by COVID-19. On March 17, 2020, the Arizona Federal Public Defender's Office implemented a mandatory telework protocol for all employees and suspended in-person field investigation. The mandatory telework policy is scheduled to remain in place until at least July 6, 2020.

Without question, the global COVID-19 pandemic is an extraordinary circumstance that is currently interfering with the development of Petitioner's habeas claims because the claims require additional investigation, including extensive travel and the assistance of experts. Specifically, Petitioner asserts that there are several witnesses who still need to be interviewed by investigators but who appear to be at higher risk of severe illness and death from COVID-19 based on their age or underlying medical conditions. These and other witnesses are located in several states, including Hawaii, where Petitioner lived in the year before the murder. Travel to Hawaii is particularly problematic as all individuals arriving to the state through June 30, 2020, are subject to a mandatory 14-day self-quarantine. One critical witness is also alleged to reside overseas. Stressing the importance of in-person interviews in capital cases, Petitioner asserts that it is irresponsible and not socially tolerable for his investigators to interview witnesses at this time.

Next, Petitioner asserts his investigation is hindered by the Arizona Department of Corrections' suspension of visitation with clients due to the pandemic. This suspension

1  remains in effect until at least July 13. Petitioner asserts this prevents his defense team
2  from monitoring his mental state, discussing sensitive and personal details necessary to
3  their investigation, and establishing the rapport and trust that are necessary to develop
4  information about Petitioner's background and experience. The suspension of visitation
5  also effects the ability of Petitioner's experts to evaluate him and formulate their opinions.
6  It is uncertain when full visitation will resume.

7  Finally, Petitioner asserts that despite prompt requests for records related to his case
8  and personal background, including court records, educational, employment, military,
9  vital, court, institutional, and medical and mental health records, some requests remain
10 unfulfilled. For instance, despite six months of regular follow up, Petitioner has been
11 unable to obtain records from the National Personnel Records Center, the VA Benefits
12 Center, and the Phoenix VA, and has been unable to obtain his case file from the Maricopa
13 County Attorney's Office. It is uncertain when these and other records might be obtained.

14 Petitioner's assertion that COVID-19 is interfering with his ability to investigate his
15 claims is supported by declarations from members of his defense team. (*See* Doc. 11, Ex
16 A (Declaration of Erin Land, mitigation specialist) and Ex. B (Declaration of Jennifer
17 Thompson, investigator)). Respondents do not contest the factual bases that support
18 Petitioner's motion. Respondents concede that the current pandemic and associated
19 conditions may constitute an extraordinary circumstance but argue that Petitioner "has not
20 and cannot" meet his burden of demonstrating reasonable diligence and has "not yet"
21 demonstrated that an extraordinary circumstance prevented him from timely filing; i.e.,
22 Petitioner cannot merely speculate how the pandemic will prevent him from timely filing
23 his habeas corpus petition. *See Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (en
24 banc) ("[F]or a litigant to demonstrate he has been pursuing his rights diligently, and thus
25 satisfies the first element required for equitable tolling, he must show that he has been
26 reasonably diligent in pursuing his rights not only while an impediment to filing caused by
27 an extraordinary circumstance existed, but before and after as well, up to the time of filing
28 his claim in federal court.") (internal citations and punctuation omitted).

Equitable tolling is generally applied retroactively, though the Supreme Court has not passed on whether equitable tolling may be granted prior to the filing of a petition. Supporting Respondents' position, some federal circuit and district courts have explicitly held that federal courts lack jurisdiction to consider the timeliness of a habeas petition until it is actually filed. *See, e.g.*, *United States v. McFarland,* 125 Fed. App'x 573, *1 (5th Cir. Apr. 6, 2005) ("Before the [§ 2255] petition itself is actually filed, 'there is no case or controversy to be heard, and any opinion we were to render on the timeliness would be merely advisory.'"); *see also Archanian v. Gittere*, No. 319-CV-00177APG-CLB, 2019 WL 6499113, at *2–3 (D. Nev. Dec. 3, 2019) (denying motion for equitable tolling as premature without prejudice to requesting equitable tolling in response to a limitations defense asserted by respondents); *Knutson v. McNurlin*, No. CV 15-2807 (DSD/BRT), 2015 WL 9224180, at *1 (D. Minn. Nov. 23, 2015), *report and recommendation adopted*, No. CV 15-2807(DSD/BRT), 2015 WL 9165885 (D. Minn. Dec. 16, 2015) (denying motion for equitable tolling as premature because "until Knutson actually files a habeas petition, this Court cannot determine whether he has diligently pursued his rights throughout the entire period preceding the filing of his petition and was prevented from timely filing due to extraordinary circumstances beyond his control . . . ."); *Gray v. Quarterman,* No. 3:08–CV–2068–D, 2008 WL 5385010 (N.D. Tex. Dec. 23, 2008) (federal courts do not "sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]"), *quoting Princeton University v. Schmid,* 455 U.S. 100, 102 (1982) (other citations omitted); *but see Hargrove v. Brigano*, 300 F.3d 717, 720–21 (6th Cir. 2002) (affirming district court's use of prospective equitable tolling in § 2254 case where tolling achieved the same result as a stay).

Prospective equitable tolling, however, is not unprecedented in this Circuit and has been practiced with some frequency, particularly in the California courts. *See Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal.* (*Beeler*), 128 F.3d 1283, 1285 (9th Cir. 1997), *overruled on other grounds by* 163 F.3d 530 (9th Cir. 1998) (en banc) (upholding district

- 5 -

court's prospective equitable tolling of the time limitation upon request by petitioner's attorneys due to a late change in counsel); *Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal.* (*Kelly V*), 163 F.3d 530 (9th Cir. 1998), *overruled on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003) (holding that a prisoner's incompetence is grounds to equitably toll the statute of limitations "until a reasonable time period after the district court makes a competency determination."); *Williams v. Chappell*, No. 1:12-CV-01344 LJO, 2013 WL 3863942, at *4–5 (E.D. Cal. July 24, 2013) (citing cases granting prospective equitable tolling). Most commonly, prospective equitable tolling is utilized to extend the limitations period, in a "stop-clock" fashion,* for the duration of time between a capital habeas petitioner's request for the appointment of counsel and the date counsel is appointed. *See Bunyard v.* Davis, 2016 WL 128429 (E.D. Cal. Jan. 12, 2016) ("Pre-petition equitable tolling in capital cases is widely accepted in this circuit."); *Williams*, 2013 WL 3863942, at *5 ("The Court is well aware that granting equitable tolling during the time capital petitioners await appointment of counsel is widely practiced and sanctioned by the appellate courts.").

A recent decision by the Ninth Circuit, however, implicitly rejects prospective tolling in this Circuit. *See Smith*, 953 F.3d 582. In *Smith*, the Ninth Circuit held that unlike statutory tolling for properly filed post-conviction petitions under 28 U.S.C. § 2244(d)(2), equitable tolling does not act as a stop-clock. *Id.* A petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Id.* at 598–99. The Ninth Circuit explicitly rejected the argument raised by Smith that Congress established a one-year-statute of limitations with the intent to provide petitioners with 365 impediment-free days to draft and file a petition. *Id.* at 591–

---

* "Stop-clock" tolling is the granting of a motion for equitable tolling to extend the limitations period for the exact duration of the impediment. For example, if counsel is not appointed for 60 days following the initiation of habeas proceedings, a court that performs stop-clock tolling would extend the limitations period for 60 days regardless of any showing of diligence after counsel is appointed or counsel's ability to nonetheless file a timely petition in the absence of tolling.

92; *accord Kayer v. Schriro*, No. CR-07-2120-PHX-DGC, 2007 WL 4150213, at *2–3 (D. Ariz. Nov. 19, 2007) (rejecting argument that AEDPA provides petitioners with a full year to prepare a habeas petition and finding petitioner's request for equitable tolling filed before the expiration of the statute of limitations premature).

Nonetheless, Petitioner points out that at least two district courts in the Ninth Circuit have granted prospective relief due to the COVID-19 pandemic after the decision in *Smith*. In *Dunn v. Baca*, No. 3:19-cv-00702-MMD-WGC, ECF No. 16 at 3 (D. Nev. May 18, 2020), the court granted prospective equitable tolling in a non-capital habeas case. The court acknowledged that prospective equitable tolling was a departure from the usual practice, and that equitable tolling, by its nature, is a retrospective equitable remedy. *Id.* at *2. The court further noted that in the event of a short deadline, the usual practice of the Federal Public Defender was to quickly file a timely petition, effectively a rough draft based upon a brief initial investigation, to which later amended petitions could relate back. The court explained that the COVID-19 pandemic made this practice "difficult to impossible":

> Visits to prison are restricted to keep the disease from spreading into the prisons. Travel to other areas for investigation is difficult. Trying to interview people on potentially sensitive issues while maintaining distance also is unwise. Courthouses are closed, and so obtaining records is difficult to impossible. Counsel for Dunn and for Respondents are working from home, as are their colleagues. The Court has received many requests for extension of time from both due to technical difficulties of setting up secure remote connections to their work computers, and their home computers might not be as efficient as their work computers. Some people have children whose schools or day-cares have closed. The parents have suddenly and unexpectedly become teachers, in addition to their normal work duties. In short, the COVID-19 pandemic is an extraordinary circumstance that is preventing parties from meeting deadlines established both by rules and by statutes.

*Id.* The district court recognized that the decision in *Smith* implicitly eliminated prospective

equitable tolling, but reasoned:

> The extraordinary circumstance of the COVID-19 pandemic is ongoing, and at the moment it is preventing Dunn from filing a timely amended petition. Put another way, if the Court were to deny prospective equitable tolling, but give Dunn additional time to file an amended petition because of the challenges he faces, then the Court can say with certainty that it would find equitable tolling to be warranted once he files the amended petition. Because the Court would do that, it will tell Dunn ahead of time that it will grant equitable tolling and relieve him of one worry.

*Id.* at *4.

A district court in the Eastern District of California also granted a capital habeas petitioner's unopposed motion to equitably toll the limitations period, finding that the "petitioner's investigation and preparation of the federal petition has been and will be impeded by the extraordinary and unforeseeable circumstances arising from the COVID-19 pandemic . . . ." *Cowan v. Davis*, No. 1:19-CV-00745-DAD, 2020 WL 1503423, at *2 (E.D. Cal. Mar. 30, 2020). The court further stated that the COVID-19 impediment implicated a petitioner's right to the assistance of appointed habeas counsel in preparing his petition for federal habeas relief, which includes a right for counsel to meaningfully research and present a defendant's claims. *Id.* at 2 (citing 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849 855–57 (1994)).

There is little doubt that ultimately, the COVID-19 pandemic will be considered an extraordinary circumstance meriting tolling for some period of time, and that Petitioner has been acting diligently to investigate and present his claims. Nonetheless, while it is tempting to "relieve" Petitioner of "one worry," the Court is concerned that doing so may negatively impact some of Petitioner's claims, especially record-based ones. *See Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012) ("AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis.") The Court shares the opinion of Judge Edmund A. Sargus, Jr., in the Southern

District of Ohio, that "the novelty of the issue presented herein militates in favor of taking the more cautious approach for which the Court has opted." *Pickens v. Shoop*, No. 19-cv-558, 2020 WL 3128536, *3 (S.D. Ohio, June 12, 2020).

The Court cannot evaluate petitioner's diligence in all time periods—before, during and after the existence of the COVID-19 pandemic—until Petitioner has filed a petition. *See Smith*, 953 F.3d at 593 n.3 ("[A] petitioner [needs] to show his diligence continued up through the point of filing his habeas petition in federal court."). The Court cannot, on the basis of Petitioner's motion, make an informed ruling on when the impediment began, when it abated, and whether Petitioner was sufficiently diligent in the periods before and after the impediment. Accordingly, the Court will adopt the procedure suggested in *Pickens*, by denying the prospective motion for equitable tolling, without prejudice, directing Petitioner to file a "protective petition," i.e., an initial but incomplete petition, and allowing Petitioner the additional 90 days requested in his motion for the filing of an amended petition.

Accordingly,

**IT IS HEREBY ORDERED**:

(1) Petitioner's motion for equitable tolling is **DENIED WITHOUT PREJUDICE**.

(2) The deadline for the filing of an initial petition is extended to **July 21, 2020**.

(3) The deadline for filing an amended petition is **October 21, 2020**.

(4) The parties are directed to confer and submit a joint proposal for the remaining deadlines no later than **Tuesday, June 23, 2020**.

Dated this 22nd day of June, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge