**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Vincent Fitzgerald, | No. CV-19-05219-PHX-MTL |
| Petitioner, | **ORDER** |
| v. | <u>DEATH-PENALTY CASE</u> |
| Ryan Thornell, et al., | |
| Respondents. | |

Before the Court is Petitioner John Vincent Fitzgerald's combined motion to stay and hold this case in abeyance until he exhausts certain habeas claims in state court (Doc. 60 at 1–19) and for authorization to have his habeas counsel represent him in state court (*id*. at 1, 19–22). Respondents oppose the former and take no position on the latter. (Doc. 66 at 1.) For the reasons below, the Court will deny both requests.

## I.     BACKGROUND

In 1993, the Arizona Legislature eliminated parole for felonies committed after December 31, 1993. A.R.S. § 41-1604.09(I) (West 1993). In 1994, the United States Supreme Court held in *Simmons v. South Carolina* that when a capital defendant's future dangerousness is at issue and state law bars his release on parole, due process entitles him to inform the jury—through argument or jury instruction—that he would be ineligible for parole if not sentenced to death. 512 U.S. 154, 156, 177–78 (1994); *see also Cruz v. Arizona* (*Cruz II*), 598 U.S. —, 143 S. Ct. 650, 655 (2023).

Years after enactment of A.R.S. § 41-1604.09(I) and the decision in *Simmons*, a

grand jury indicted Fitzgerald for a 2005 burglary and murder, and the State noticed the intent to seek a death sentence for the murder. (R.O.A. 4, 25.) A jury found Fitzgerald guilty as charged. (R.O.A. 469–70.)  At the penalty phase for the murder, the court declared a mistrial. *State v. Fitzgerald*, 303 P.3d 519, 521 (Ariz. 2013). As a result, a new jury had to be selected for a new penalty phase.

In selecting a jury for the new penalty phase, prospective jurors were told in a questionnaire that if the jury did not sentence Fitzgerald to death, the trial court would sentence him to life in prison, either with or without "the possibility of *release*." (R.O.A. 644 at 10, emphasis added.) At voir dire, the court also told the prospective jurors that if not sentenced to death for the murder, the court would sentence Fitzgerald to life in prison, either with or without the "possibility of *parole*," despite Fitzgerald being parole ineligible. (R.T. 5/24/10 at 13; R.T. 5/25/10 at 12; R.T. 5/26/10 at 7–8, emphasis added.) After empaneling a new penalty-phase jury, the court, without objection, instructed the jury that if it spared Fitzgerald's life, the court would sentence him to life in prison, either with or without "the possibility of release." (R.T. 6/2/10 at 39–40, 54–55; R.T. 8/18/10 at 30.) The court explained that life in prison without the possibility of release meant that he would be ineligible for release "on any basis," including parole. (R.T. 6/2/10 at 40.) At no point did Fitzgerald seek a *Simmons* instruction, or to tell the jury that he was parole ineligible.

The jury sentenced Fitzgerald to death. *Fitzgerald*, 303 P.3d at 521, ¶ 3. Fitzgerald did not raise a *Simmons* claim on direct appeal or on postconviction review ("PCR"). (*See* Opening Brief; R.O.A. 877.) Nor did he receive relief in either proceeding. (R.O.A. 916.)

In 2015, the Arizona Supreme Court held in *State v. Lynch* (*Lynch I*) that a trial court did not err in refusing to give a *Simmons* instruction, citing A.R.S. § 41-1604.09(I), because the defendant was eligible for other forms of release, such as clemency. 357 P.3d 119, 138 (Ariz. 2015) (citing A.R.S. § 13-703(A), renumbered as § 13-751(A)). But the United States Supreme Court reversed *Lynch I*, holding that future clemency, or the enactment of a statute restoring parole, did not "diminish[ ] a capital defendant's right to inform a jury of his parole ineligibility." *Lynch v. Arizona* (*Lynch II*), 578 U.S. 613, 615

(2016) (citing *Simmons*, 512 U.S. at 166, 177).

In 2019, Fitzgerald commenced this habeas case, and the Court appointed the Arizona Federal Public Defender's Office to represent him but barred habeas counsel from representing Fitzgerald "in state forums or prepar[ing] any state court pleadings" absent the Court's "express authorization." (Doc. 1; Doc. 5 at 1). In July 2020, Fitzgerald filed his initial habeas petition. (Doc. 21.) Meanwhile, in April 2020, the Arizona Supreme Court agreed to review *State v. Cruz* (*Cruz I*), CR 17-0567-PC (Ariz.), to address whether *Lynch II* was a "significant change in the law" under Arizona Rule of Criminal Procedure 32.1(g), so as to bar a successive PCR raising a raising a *Lynch II* claim.[1]

In June 2021, the Arizona Supreme Court held in *Cruz I* that *Lynch II* was not a significant change in the law under Rule 32.1(g). 487 P.3d 991 (Ariz. 2021). In October, 2022, Fitzgerald amended his habeas petition, alleging in Claim 14 that the trial court violated his Fourteenth Amendment due process rights by failing to give a *Simmons* jury instruction. (Doc. 35 at 282–90.) He acknowledged that he did not seek such an instruction or raise a *Simmons* claim in state court. (Doc. 35 at 280, 282.)

In 2023, the Supreme Court reversed the Arizona Supreme Court's holding in *Cruz I*, that *Lynch II* "was not a significant change in the law for purposes of Rule 32.1(g)" and that *Cruz I* was not based on an adequate and independent state-law ground as to bar Cruz's filing of a successive PCR petition asserting a *Lynch II* claim. *Cruz v. Arizona* (*Cruz II*), 598 U.S. 17, 143 S. Ct. 650, 655 (2023) (quoting Ariz. R. Crim. P. 32.1(g)).

The Court vacated "the judgments" and remanded "the cases" of other Arizona death row prisoners "to the Superior Court of Arizona, Maricopa County for further consideration in light" of *Cruz II*. *Burns v. Arizona*, 21-847, — U.S. —, 143 S. Ct. 997 (2023) (Mem.).[2] In light of *Cruz II*, Fitzgerald filed his combined motion, which is fully

---

[1] Under Rules 32.1(g) and 32.2(b), a defendant may obtain relief on successive PCR if an applicable, "significant change in the law . . . would probably overturn the defendant's judgment or sentence." Ariz. R. Crim. P. 32.1(g) and 32.2(b).

[2] Prisoners Johnathan Burns, Steve Boggs, Ruben Garza, Fabio Gomez, Steven Newell, and Stephen Reeves filed a joint petition for a writ of certiorari based on *Cruz II*.

1    briefed. (Docs. 62–63, 66–67.)

2    **II.     APPLICABLE LAW**

3         **A.     *Rhines* Stay**

4         Under *Rhines v. Weber*, the Court may stay a habeas case that contains both
5    exhausted and unexhausted claims while the petitioner exhausts his unexhausted claims in
6    state court, before returning to the habeas court for review of the fully exhausted petition.
7    544 U.S. 269, 271–79 (2005). A *Rhines* stay is proper only if the petitioner shows (1) "good
8    cause" for the failure to exhaust, (2) the unexhausted claim is "potentially meritorious,"
9    and (3) the petitioner did not "engage[] in intentionally dilatory litigation tactics." *Id.* at
10   277–78. Because a *Rhines* stay applies solely to a petition containing both exhausted and
11   unexhausted claims, i.e., a mixed petition, this Court must first decide whether any of the
12   claims that Fitzgerald seeks to exhaust are unexhausted. *See King v. Ryan*, 564 F.3d 1133,
13   1140 (9th Cir. 2009); *see also*, *e.g.*, *Bearup v. Shinn*, No. CV-16-03357-PHX-SPL (D.
14   Ariz. Jan. 26, 2023) (Doc. 150).

15        **B.     Exhaustion**

16        A petitioner has not exhausted a habeas claim in state court "if he has the right under
17   the law of the State to raise, by any available procedure, the question presented." 28 U.S.C.
18   § 2254(c). A claim is exhausted if (1) it has been fairly presented to the highest state court
19   with jurisdiction to consider it or (2) no state remedy remains available to exhaust the claim.
20   *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). No state remedy remains available if
21   the state's procedural rules bar a state court from considering the claim, resulting in the
22   claim being "technically exhausted." *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (citing
23   *Gray v. Netherland*, 518 U.S. 152, 161 (1996)); *Coleman v. Thompson*, 501 U.S. 722, 732
24   (1991) (citing 28 U.S.C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 125–26 n.28 (1982))
25   (claims defaulted in state court); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007).
26   Hence, a *Rhines* stay should not be granted if a petition contains only claims that are
27   actually, or technically, exhausted. *See*, *e.g.*, *Pritchett v. Gentry*, No. 2:17-cv-01694-JAD-
28   DJA, 2022 WL 4366996, at *4 (D. Nev. Sept. 21, 2022) (noting "[t]he point of [the] stay

1   is to allow" presentment of "unexhausted claims" in state court); *White v. Ryan*, No. CV-
2   09- 2167-PHX-FJM (LOA), 2010 WL 1416054, at *12 (D. Ariz. Mar. 16, 2010) (denying
3   *Rhines* stay of a petition that has only exhausted or technically exhausted claims).

4                **C.    Arizona's Bar on Successive Postconviction-Relief Claims**

5          Rule 32 of the Arizona Rules of Criminal Procedure governs postconviction review
6   for those convicted and sentenced following a trial. Ariz. R. Crim. P. 32.1. As relevant
7   here, postconviction relief is available for a constitutional violation under Rule 32.1(a), *id.*
8   at 32.1(a); when "newly discovered material facts probably exist" that "probably would
9   have changed the judgment or sentence," *id.* at (e); and when there is "a significant change
10  in the law that, if applicable to the defendant's case, would probably overturn the
11  defendant's judgment or sentence," *id.* at (g).

12         A constitutional claim under Rule 32.1(a) is precluded if it was "finally adjudicated
13  on the merits in an appeal or in any previous post-conviction proceeding," Ariz. R. Crim.
14  P. 32.2(a)(2), or if it was "waived at trial or on appeal, or in any previous post-conviction
15  proceeding, except when the claim raises a violation of a constitutional right that can only
16  be waived knowingly, voluntarily, and personally by the defendant," *id.* at (3). A claim
17  under Rules 32.1(e) or (g) is precluded under Rule 32.2(a)(2) but not generally precluded
18  under Rule 32.2(a)(3). Ariz. R. Crim. P. 32.2(b).

19         As to claims of ineffective assistance of trial counsel, Arizona's "basic rule is that
20  where ineffective assistance of counsel claims [were] raised, or could have been raised, [on
21  the first PCR], subsequently raised claims of ineffective assistance will be deemed waived
22  and precluded." *State v. Spreitz*, 39 P.3d 525, 526 (Ariz. 2002) (emphasis omitted); *see*
23  *also Stewart v. Smith*, 46 P.3d 1067, 1071, ¶ 12 (Ariz. 2002) ("The ground of ineffective
24  assistance of counsel cannot be raised repeatedly."). Indeed, in *Smith*, the Arizona Supreme
25  Court held that courts must find ineffectiveness of trial counsel claims raised in successive
26  PCRs precluded "without examining facts," including when an  ineffective-assistance-of-
27  trial-counsel claim on successive PCR falls within Rule 32.2(a)(3)'s personal-waiver
28  exception. 46 P.3d at 1071, ¶ 12.

1   **III.    DISCUSSION**

2       Fitzgerald argues that his *Simmons*/*Lynch II* claim, as well as seven of his

3   ineffective-assistance-of-trial-counsel claims, warrant a *Rhines* stay.[3] (Doc. 63 at 1–19.)

4       **A.    Fitzgerald's *Simmons*/*Lynch II* Claim is Unexhausted**

5       Fitzgerald argues that his *Simmons*/*Lynch II* is now unexhausted based on *Cruz II*.

6   Respondents assert that the *Simmons*/*Lynch II* claim remains exhausted despite *Cruz II*, in

7   essence, because it is meritless. (Doc. 66 at 4–5.)

8       The Court first finds Fitzgerald's *Simmons*/*Lynch II* claim is unexhausted under

9   *Cruz II*, as he may now pursue it on a successive PCR under Rules 32.1(g) and 32.2(b)

10  because the existence of a significant change in the law permits review on a successive

11  PCR. *See Cruz II*, 143 S. Ct. at 658 (acknowledging that "Rule 32.1(g) allows defendants

12  to file a successive or untimely postconviction petition if there has been 'a significant

13  change in the law'"); *see also*, *e.g.*, *State v. Lawrence*, No. 2 CA-CR 2016-0080-PR, 2016

14  WL 3220970, at *2, ¶ 7 (Ariz. Ct. App. June 10, 2016) (citing Ariz. R. Crim. P. 32.1(g))

15  (stating that "under Rule 32.2(b), a defendant may avoid preclusion by showing . . . a

16  significant change in the law"); *State v. Shrum*, 203 P.3d 1175, 1178 (Ariz. 2009) ("The

17  rationale for the Rule 32.1(g) exception from waiver and preclusion is apparent: A

18  defendant is not expected to anticipate significant future changes of the law in his of-right

19  PCR proceeding or direct appeal."). *See also Van Winkle*, 2023 WL 3321709, at *4 (citing

20  28 U.S.C. § 2254(c); *cf*, *Newman v. Norris*, 597 F.Supp.2d 890, 895 (W.D. Ark. 2009)

21  (granting *Rhines* stay to exhaust in state court as a matter or comity); *Rodriguez v. Uhler*,

22  15cv09297 (GBD) (DF), 2017 WL 9807068, at *8 (S.D.N.Y. Oct. 23, 2017) (same).

23      **B.    Fitzgerald's *Simmons*/*Lynch II* Claim Lacks Potential Merit**

24      Although Fitzgerald is not precluded from filing a successive PCR in state court to

25  exhaust Claim 14, Claim 14 lacks potential merit to support a *Rhines* stay. *See Rhines*, 544

26  _____

27  [3] In Claim 14, Fitzgerald also asserts that the repeated incorrect jury instructions regarding
    his eligibility for parole also violated his Eighth Amendment right to a reliable penalty

28  phase. (Doc. 35 at 282–90.) Because Fitzgerald does not seek a *Rhines* stay to exhaust this
    subclaim, the Court does not consider it here.

U.S. at 277 ("[E]ven if a petitioner had good cause for that failure, th[is Court] would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless."). Although the "potential merit" standard is not onerous, *id.*, a claim lacks potential merit if "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Thus, a claim has potential merit "unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *See Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017) (quoting *Cassett*, 406 F.3d at 624). Respondents argue that the *Simmons/Lynch II* claim lacks potential merit under *State v. Bush*, 423 P.3d 370 (Ariz. 2018), because Fitzgerald did not seek to have the jury informed of his parole ineligibility. (Doc. 66 at 4–6.) In that case, the Arizona Supreme Court held that *Simmons* requires only that a defendant be given the opportunity to rebut his alleged future dangerousness by informing the jury of his parole ineligibility. *Bush*, 423 P.3d at 387–88. Fitzgerald asserts that even though he did not request a *Simmons* jury instruction at trial or to raise his parole eligibility to the jury, the trial court violated *Simmons* by incorrectly instructing the jury that he was parole eligible. (Doc. 62 at 9–10.) That incorrect instruction, he argues, "offends basic notions of fairness and due process." (Doc. 63 at 9–10.)

"Capital sentencing proceedings must of course satisfy" due process. *Clemons v. Mississippi*, 494 U.S. 738, 746 (1990). Due process "expresses the requirement of 'fundamental fairness.'" *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 24 (1981). An incorrect jury instruction may deny such fairness if "'the ailing instruction by itself so infected the entire trial [such] that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A capital defendant is also denied due process "when the death sentence was imposed, at least in part, on the basis of information which [he] had no opportunity to deny or explain." *Gardner v. Florida*, 430 U.S. 349, 362 (1977).

Under *Simmons*, due process entitles a capital defendant the opportunity to rebut alleged future dangerousness by having the jury informed of the defendant's parole

ineligibility. 512 U.S. at 156-78; *see also Bush*, 42 3 P.3d at 386-88, ¶¶ 69-75. Thus, *Simmons* expressly flows from the opportunity to have a jury informed of the defendant's parole ineligibility. *Simmons*, 512 U.S. at 161 (Blackmun, J., joined by Stevens, Suter, and Ginsburg, JJ.); *id.* at 175 (O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J., concurring in judgment).

In *Bush*, the Arizona Supreme Court, parsing the *Simmons* plurality, found that Justice O'Connor's concurrence offered the "'narrowest ground[]' that 'may be viewed as [the] position taken by' the [Supreme] Court on the issue of what due process requires in this context.'" 423 P.3d at 387 (quoting *Marks v. United States*, 430 U.S 188, 193 (1977)).[4] Thus, the *Bush* court held that "the due process right under *Simmons* merely affords a parole-ineligible capital defendant the right to 'rebut the State's case' (if future dangerousness is at issue) by informing the jury that 'he will never be released from prison' if sentenced to life." *Bush*, 423 P.3d at 387 (quoting *Simmons*, 512 U.S. at 177, O'Connor, J., concurring in the judgment); *see also O'Dell v. Netherland*, 521 U.S. 151, 159 (1997) (noting that in *Simmons* "there was no opinion for the Court" and that four Justices merely "concluded that the Due Process Clause required allowing the defendant to inform the jury—through argument or instruction—of his parole ineligibility in the face of a prosecution's future dangerousness argument").

The Arizona Supreme Court observed that in every case in which either it or the United States Supreme Court had found reversible *Simmons* error, the trial court had "either rejected the defendant's proposed jury instruction regarding his ineligibility for parole, prevented defense counsel 'from saying anything to the jury about parole ineligibility' or both." *Id.* at 388, ¶ 74 (citing *Simmons*, 512 U.S. at 175, Ginsburg, J., concurring); *Lynch II*, 578 U.S. at 614 (both); *Kelly v. South Carolina*, 534 U.S. 246, 249 (2002) (refusal to

---

[4] In *Marks*, the court noted, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." (internal quotation omitted). This is known as the "Marks rule." *See e.g.*, *Johnson v. City of Grants Pass*, 72 F.th 868. 896 (9th Cir. 2023) (Collins, J. dissenting); *United States v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006); *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1139 (9th Cir. 2005) (Berzon, J., dissenting in part).

inform); *Shafer v. South Carolina*, 532 U.S. 36, 41–46 (2001) (citing both); *State v. Hulsey*, 408 P.3d 408, 435 (Ariz. 2018) (both); *State v. Rushing*, 404 P.3d 240, 249 (Ariz. 2017) (refusal to inform); *State v. Escalante-Orozco*, 386 P.3d 798, 828 (Ariz. 2017) (refusal to inform)). The Arizona Supreme Court denied Bush relief under *Simmons* because, "[u]nlike in the aforementioned cases, the trial court neither refused to instruct, nor prevented Bush from informing, the jury regarding his parole ineligibility." *Id.*, ¶ 75.

At Fitzgerald's trial, the court incorrectly instructed jurors that he was eligible for parole, when he was not. It did not, however, deny Fitzgerald the opportunity to have the jury informed of his parole ineligibility through a curative instruction, as Fitzgerald did not request one. Nor did he ask to inform the jury himself of such ineligibility. In short, Fitzgerald's *Simmons/Lynch II* claim lacks potential merit because Fitzgerald did not seek to have the jury informed of his parole ineligibility either through a curative instruction or argument to the jury. As the Fourth Circuit noted in *Townes v. Murray*, "[T]he defendant's right, under *Simmons*, is one of opportunity, not of result." 68 F.3d 840, 850 (4th Cir. 1995). To the extent Fitzgerald claims that the trial court denied him due process, it did not deny him due process under *Simmons*.

Fitzgerald cites an array of case law to support his contentions to the contrary. (Doc. 63 at 9; Doc. 67 at 5–8 and n.2.) He asserts that *Cruz II* and the remand of the six cases in *Burns* casts doubt on the interpretation of *Simmons* above, noting that four of those petitioners never invoked *Simmons* at trial.  (Doc. 67 at 5 n.2.) But the narrow issue raised in *Burns* was "the same question presented" in *Cruz II*—"[w]hether the Arizona Supreme Court's holding that Arizona Rule of Criminal Procedure 32.1(g) precluded post-conviction relief [was] an adequate and independent state-law ground for the judgment." *See Burns*, Joint Petition for Writ of Certiorari, No. 21-847 (U.S. Oct. 4, 2021). Neither *Cruz II,* nor *Burns*, held that a capital defendant's failure to invoke *Simmons* at trial was denied due process, where the trial court did not, sua sponte, give a *Simmons* instruction and had inaccurately informed the jury that the defendant might be eligible for parole or release if not sentenced to death. *See United States v. Castillo*, 69 F.4th 648, 657 (9th Cir.

2023) ("Surely, issues which are 'neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents,'" quoting *United States v. Kirilyuk*, 29 4th 1128, 1134 (9th Cir. 2022)).

Fitzgerald also cites Chief Justice Rehnquist's dissent in *Kelly v. South Carolina*, 534 U.S. 246, 258-59 (2002), for the proposition that the majority had expanded the due process right announced in *Simmons* to instances when the prosecutor had not argued future dangerousness, but where evidence introduced to prove other elements of the case had a tendency to put the defendant's future dangerousness at issue. (Doc. 67 at 6–8.) But in *Kelly*, the Supreme Court did not expand *Simmons*, as suggested by Fitzgerald, to impose an affirmative duty on a court to sua sponte provide a *Simmons* instruction absent a defendant's request. Instead, counsel in *Kelly* had requested, and was denied, a *Simmons* instruction. Chief Justice Rehnquist did not state that *Kelly* imposed that affirmative duty; rather, the Chief Justice stated that *Kelly* expanded *Simmons* by applying *Simmons* even if the state only implied—but did not expressly argue—the defendant's future dangerousness. The holding in *Kelly* did not alter the rule under *Simmons* that a defendant must invoke *Simmons* at trial or provide a basis to distinguish Fitzgerald's case from the holdings in *Bush* and *Simmons*.

Fitzgerald also contends that *Shafer* renders his *Simmons*/*Lynch II* claim potentially meritorious. (Doc. 67 at 6–8.) In *Shafer*, the defendant requested, but was denied, a *Simmons* instruction. 532 U.S. at 41–42. The United States Supreme Court held "that whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's then-new scheme, due process require[d] that the jury be informed that a life sentence carrie[d] no possibility of parole." *Id*. at 51. The Supreme Court rejected the state's argument that *Simmons* was satisfied where, at closing argument, the defendant told the jury that if his life was spared, he would "die in prison" after "spend[ing] his natural life there." *Id*. at 52–54. The Supreme Court explained that "[d]isplacement of [South Carolina's] 'longstanding practice of parole availability' remain[ed] a [then-] relatively recent development, and 'common sense tells us that many jurors might not know whether

a life sentence carries with it the possibility of parole.'" *Id*. at 52 (quoting *Simmons*, 512 U.S. at 177–78, O'Connor, J., concurring). "In sum, a life sentence for Shafer would permit no 'parole, community supervision, . . . early release program, . . . or any other credits that would reduce the mandatory life imprisonment'"; "this reality was not conveyed to Shafer's jury by the court's instructions or by the arguments defense counsel was allowed to make." *Id*. at 54. The holding in *Shafer* did not alter the rule under *Simmons* that a defendant must invoke *Simmons* at trial.

Fitzgerald further cites *State v. Laney*, in which the South Carolina Supreme Court held:

> [W]here a defendant's future dangerousness is at issue in a capital sentencing proceeding, and the only sentencing alternative to death available to the jury is life imprisonment without parole, the trial judge *shall* charge the jury, whether requested or not, that life imprisonment means until the death of the defendant without the possibility of parole.

627 S.E.2d 726, 730 (S.C. 2006). Although the *Laney* court imposed that requirement following the decisions in *Shafer* and *Kelly*, neither of those cases altered the rule under *Simmons*, or *Gardner*, that where future dangerousness is at issue, a defendant must invoke *Simmons* in order to be afforded the opportunity to inform the jury of the defendant's parole ineligibility. The United States Supreme Court has not imposed the requirement in *Laney*.

Finally, Fitzgerald cites *Bronshtein v. Horn*, in which a federal district court in Pennsylvania granted habeas relief on a *Simmons* claim even though "the petitioner did not object at trial to the trial court's failure to instruct the jury that life means life without parole." (Doc. 67 at 6–7, quoting No. CIV. A. 99-2186, 2001 WL 767593, at *18–21 and n.23 (E.D. Pa. July 5, 2001), *affirmed in part, reversed in part, and remanded*, 404 F.3d 700, 719 (3d Cir. 2005) (affirming *Simmons* relief)). But in *Bronshtein*, the court concluded that there was no procedural default sufficient to prevent it from considering Bronshtein's claims on the merits; that is, no adequate clearly established state bar applied as of the time of waiver.

- 11 -

The court further found that in denying relief, the state court had not reached the merits of his claims, *id.* at *11, and granted relief on Bronshtein's *Simmons* claim, *id.* at 18-19. The court did not consider Bronshtein's apparent failure to object at trial to the trial court's failure to give a *Simmons* instruction because the Supreme Court of Pennsylvania had not relied on Bronshtein's failure to object at trial in finding his claims procedurally defaulted. *See id.*, n.19, 23. And to the extent the habeas court considered his failure to object at trial, this Court agrees with the *Bush* and *Townes* courts' reading of *Simmons*: It is the denial of a request for a *Simmons* instruction or denial of a motion to argue parole ineligibility at trial, that denies due process, not the trial court's failure to sua sponte give a *Simmons* instruction.

In sum, *Cruz II* renders Fitzgerald's *Simmons*/*Lynch II* claim unexhausted and his petition mixed. That claim nonetheless lacks potential merit, where Fitzgerald failed to invoke *Simmons* at trial, as discussed above. Accordingly, the Court will deny habeas relief on that claim because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2) (allowing denial of unexhausted claims on the merits); *see also Lambrix v. Singletary*, 520 U.S. 518, 524–25 (1997) (explaining that the court may bypass the procedural default issue in the interest of judicial economy when the merits are clear but the procedural default issues are not); *Peavy v. Madden*, No.: 19cv0743-MMA (BGS), 2020 WL 4747722, at *14 (S.D. Cal. Aug. 17, 2020) ("A claim is plainly meritless where 'it is perfectly clear that the petitioner has no hope of prevailing.' That same standard applies to whether this Court can deny an unexhausted claim on the merits.").

## C.  Ineffective-Assistance-of-Trial Counsel Claims

Fitzgerald also argues that seven of his ineffective-assistance-of-trial-counsel claims warrant a *Rhines* stay (Claims 1, 8, 9, 11, 13, 15, and 16). (Doc. 35 at 57–107, 189–244, 251–60, 270–81, 209–338; Doc. 63 at 14 n.2.) The PCR court denied relief on Claims 1, 8, 9, 11 (R.O.A. 877 at 28–39, 52–60, 74–76, 76–92; PFR 5 at 7–9, 15, 18–19, 19–24), and the Arizona Supreme Court denied review (R.O.A. 916 at 4–17, 24–40, 64–67, 67–77; PFR 22). As a result, Claims 1, 8, 9, and 11 are exhausted and therefore barred from relief

1    on successive PCR under Rule 32.2(a)(2).

2         Fitzgerald did not raise Claims 13, 15, or 16 as part of his ineffective-assistance

3    claims. (*See* R.O.A. 877; PFR 5.) Therefore, Claims 13, 15, and 16 are now technically

4    exhausted and barred on successive PCR. *See Spreitz*, 39 P.3d at 526; *Smith*, 46 P.3d at

5    1071, ¶ 12; *see also*, *e.g.*, *Armstrong*, 2017 WL 1152820, at *6; *Lopez v. Schriro*, No. CV-

6    98-0072-PHX-SMM, 2008 WL 2783282, at *9 (D. Ariz. July 15, 2008), *amended in part*,

7    No. CV-98-0072-PHX-SMM, 2008 WL 4219079 (D. Ariz. Sept. 4, 2008), *and aff'd sub*

8    *nom. Lopez v. Ryan*, 630 F.3d 1198 (9th Cir. 2011) ("[I]f additional ineffectiveness

9    allegations are raised in a successive petition, the claims in the later petition necessarily

10   will be precluded.").

11        Relying on *Fitzgerald v. Myers*, 402 P.3d 442, 445–51 (Ariz. 2017), Fitzgerald

12   argues that his incompetence on PCR provides an available avenue to exhaust the

13   ineffective-assistance claims under Rule 32.1(e). (Doc. 63 at 16; Doc. 67 at 11.) *Fitzgerald*

14   does not support this argument. *See*, *e.g.*, *Morris v. Thornell*, No. CV-17-00926-PHX-

15   DGC, 2023 WL 4237334, at *9 (D. Ariz. June 28, 2023). In that case, the Arizona Supreme

16   Court held that state law did not require that a defendant be competent during PCR.

17   *Fitzgerald*, 402 P.3d at 445. The court did not address whether there was a due process

18   right to be competent during PCR because it had not been properly raised. *Id.* at 451. The

19   court acknowledged that, at times, "a capital defendant's input and participation regarding

20   a particular Rule 32 claim are needed and [are] perhaps imperative." *Id.* at 450. But "any

21   alleged prejudice caused by the petitioner's incompetency may be addressed in a

22   successive PCR petition *based on newly discovered facts* under Rule 32.1(e). *Id.* at 449

23   (emphasis added).

24        Fitzgerald asserts that these ineffective-assistance claims are not precluded on a

25   successive PCR under Rule 32.1(e) "based on newly discovered material facts that could

26   not have been discovered previously due to [his] incompetence." (Doc. 63 at 17.) But he

27   does not allege any newly discovered material facts as to Claims 13, 15, or 16. Nor does

28   he argue or show that his "input and participation" were necessary or imperative, to

1   discover any new facts and thereby fails to establish that he has an available remedy based

2   on newly discovered facts.

3          Because Fitzgerald's ineffective-assistance claims are either actually exhausted,

4   Claims 1, 8, 9, and 11, or technically exhausted, Claims 13, 15, and 16, *Rhines* does not

5   apply to them. See *Rhines*, 544 U.S. at 271–79 (permitting a stay of a federal habeas case,

6   "in limited circumstances," to allow petitioners to *exhaust unexhausted claims* in state

7   court); *see also*, *e.g.*, *McCray v. Shinn*, No. CV-17-01658-PHX-DJH, 2020 WL 919180,

8   at *3 (D. Ariz. Feb 26, 2020) (denying *Rhines* stay, without reaching the three-pronged

9   Rhines test, because the claims are technically exhausted, as they have no available state-

10   court remedy); *Johnson v. Ryan*, No. CV-18-00889-PHX-DWL, 2019 WL 1227179, at *1–

11   2 (D. Ariz. Mar. 15, 2019) (same). Thus, the Court will deny a *Rhines* stay as to them.

12   **IV.     MOTION TO AUTHORIZE**

13          Fitzgerald moves to authorize habeas counsel to represent him on successive state

14   PCR under the Criminal Justice Act of 1964 (CJA), 18 U.S.C. § 3599(a)(2). (Doc. 63 at 1,

15   19–22.) The CJA "provides for the appointment of [federal] counsel for . . . indigent[ ]"

16   defendants in federal habeas cases, *Harbison v. Bell*, 556 U.S. 180, 184–85 (2009) (citing

17   18 U.S.C. § 3599(a)(2)), and requires counsel to represent them:

18
19                  throughout every subsequent stage of available judicial
                    proceedings, including . . . all available post-conviction
20                  process, together with application for stays of execution and
                    other appropriate motions and procedures and . . . in such
21                  competency proceedings and proceedings for executive or
                    other clemency as may be available to the defendant.
22

23   18 U.S.C. § 3599(e). State postconviction review is not a stage "subsequent" to a federal

24   habeas case. *See Harbison*, 556 U.S. at 189 (citing 28 U.S.C. § 2254(b)(1)) (holding as

25   such, explaining that "[p]etitioners must exhaust their claims in state court before seeking"

26   the writ). Thus, "a state prisoner" lacks the "statutory right" to "federally paid counsel" in

27   seeking state postconviction relief. *Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198,

28   1213 (11th Cir. 2014) (citing *Harbison*, 556 U.S. at 189); *see also*, *e.g.*, *Hitcho v. Wetzel*,

1    No. 16-1156, 2016 WL 8717228, at *3 (E.D. Pa. Oct. 14, 2016) (acknowledging *Lugo*).

2         Yet this Court may decide "on a case-by-case basis that it is appropriate for"

3    counsel—"in the course of [their] federal habeas representation"—to exhaust claims in

4    state court. *Harbison*, 556 U.S. at 190 n.7 (based on § 3599(e)'s provision that counsel may

5    represent the prisoner "in 'other appropriate motions and procedures'"); *see also*, *e.g.*,

6    *Gallegos v. Ryan*, No. CV-01-01909-PHX-NVW, 2017 WL 3822070, at *5 (D. Ariz. July

7    2017) (stating, based on *Harbison*, 556 U.S. at 190 n.7, that "this Court has the discretion

8    to appoint federal counsel to represent [federal habeas petitioner] in state court").

9         In denying Fitzgerald a *Rhines* stay, such authorization is inappropriate. *See*, *e.g.*,

10   *id*. at *2–5 (denying such authorization by denying a *Rhines* stay to exhaust a "time-barred"

11   claim under 28 U.S.C. § 2244(d)(1) as futile); *see also Hardy v. Shinn*, No. CV-18-02494-

12   PHX-JJT, 2021 WL 4060555, at *7 and n.3 (D. Ariz. Sept. 7, 2021) (denying authorization

13   for capital habeas counsel to exhaust federal habeas claims in state court based on denial

14   of a *Rhines* stay for no good cause shown and "indications" of "dilatory litigation tactics");

15   *Johnson v. Ryan*, No. CV-18-00889, 2019 WL 1227179, at *2 (D. Ariz. Mar. 15, 2019)

16   (denying such authorization  as "inappropriate and unnecessary" because petitioner was

17   not "entitled to a *Rhines* stay," "together with the *Harbison* Court's discussion of [§

18   3599(e)'s] parameters").[5]

19   . . .

20   . . .

21   . . .

22   . . .

23   . . .

24   . . .

25   

26   [5] To support this motion, Fitzgerald refers the Court to Exhibit B, Memorandum re Use of
     Defender Services Appropriated Funds by Federal Appointed Counsel for State Court
27   Appearances in Capital Habeas Corpus Cases of District/Circuit Court Judge Claire V.
     Eagen (Dec. 9, 2010)). Judge Eagan stated that her memorandum was intended to address
28   the issue of expending federal funds in state court *after* a habeas court has determined that
     a remedy is available to exhaust it in state court. *Id.* at 2. That is not the case here.

1    Accordingly,

2         **IT IS ORDERED denying** Claim 14 to the extent that it asserts a violation of

3    *Simmons* and *Lynch II*.

4         **IT IS FURTHER ORDERED denying** Fitzgerald's Motion for Temporary Stay

5    and Abeyance and for Authorization to Represent Petitioner in State Court (Doc. 63).

6         Dated this 1st day of September, 2023.

7

8

9                                        Michael T. Liburdi
                                         United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -